IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**HONEY HAYDEN**                                                            **PLAINTIFF**

**V.**                  **CASE NO. 4:22-CV-00376-JM-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                      **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge James M. Moody Jr. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. INTRODUCTION**

On August 20, 2019, Honey Hayden applied for disability benefits, alleging disability beginning on April 15, 2014. (Tr. at 12). Her claims were denied both initially and upon reconsideration. *Id.* After conducting a hearing on December 7, 2020, an Administrative Law Judge ("ALJ") denied Hayden's application on February 18, 2021. (Tr. at 23). Hayden sought review from the Appeals Council, which denied her request.

1

(Tr. at 1). The ALJ's decision thus stands as the final decision of the Commissioner, and Hayden now seeks judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION[1]

The ALJ found that Hayden had not engaged in substantial gainful activity since the alleged onset date of April 15, 2014. (Tr. at 15). At Step Two of the disability evaluation, the ALJ found that Hayden had the following severe impairments: diabetes mellitus, diabetic polyneuropathy, stage III chronic kidney disease, atrial fibrillation, and hypertension. *Id*.

After finding Hayden's impairments did not meet or equal a listed impairment, the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) she could not climb ropes, ladders, or scaffolds; (2) she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; (3) she could not be exposed to temperature extremes of heat or cold; and (4) she could not be exposed to concentrated fumes, odors, or gases. (Tr. at 17-18).

---

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

At Step Four, the ALJ found that Hayden had no past relevant work she could perform. (Tr. at 21). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that Hayden's RFC would allow her to perform jobs that exist in significant numbers in the national economy, including the jobs of merchandise marker and subassembler. (Tr. at 22). The ALJ concluded, therefore, that Hayden was not disabled. (Tr. at 23).

**III. DISCUSSION**

    **A.**     **Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It

means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    **B.    Hayden's Arguments on Appeal**

Hayden argues that the ALJ's decision is not supported by substantial evidence. She alleges that the ALJ erred by: (1) finding that Hayden could perform the standing and walking requirements of light work; and (2) failing to obtain medical opinions from Hayden's treating physicians. Hayden also seeks a declaratory judgment stating that "the system used by the Social Security Administration results in decisions that are arbitrary and capricious, fails to provide Constitutionally required due process as required by the Fifth Amendment to the United States Constitution, and fails to provide equal protection as required by the Fourteenth Amendment to the United States Constitution." *Doc. 11 at 18*. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

    **Claim 1: RFC for Light Work**

Hayden first argues that the ALJ should have made explicit findings about her ability to stand and walk but failed to do so. She contends that the ALJ committed reversible error by not specifically pointing to evidence showing she could stand or walk for six hours in a workday. She suggests that her foot pain, diabetic neuropathy, and cardiac issues—with associated symptoms of dizziness, weakness, and fatigue—cast doubt on this portion of the RFC.

This argument is unavailing. To be clear, it is Hayden—not the ALJ—who bears the burden of proving her functional capabilities. "The ALJ bears the primary responsibility

4

for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC. However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal citation omitted) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). And, although the Court reviews the ALJ's decision to ensure the ALJ did not "disregard evidence or ignore potential limitations," the ALJ is not required to "mechanically list and reject every possible limitation" in formulating the RFC. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) ("Here, however, the ALJ did not simply describe the RFC in 'general terms.' He made explicit findings and, although we would have preferred that he had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions.")).

    The ALJ properly assessed Hayden's RFC by considering the record as a whole, including the medical records, prior administrative medical findings from reviewing physicians, and Hayden's own description of her limitations. *See Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016). The ALJ specifically limited Hayden to light work with postural restrictions "to account for [her] cardiovascular, endocrine, and neurological conditions and prevent[] exacerbating [her] symptoms of pain, weakness, and neuropathy." (Tr. at 20). Implicit in the RFC is the ALJ's finding that Hayden could stand or walk up to six hours per workday. *See Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5–6 (1983). Substantial evidence supports the ALJ's finding.

The medical records support the RFC. They show that Hayden's neuropathy resulted in partial foot numbness and pain in her feet, which was somewhat controlled by medication. (Tr. at 557, 583, 714, 799). Physical exams showed intermittent edema in her feet, along with wounds that were slow to heal. (Tr. at 564, 764). However, her exam findings were generally unremarkable, showing normal station, gait, strength, and ambulation. (Tr. at 633-34, 641, 655-57). Hayden had a long history of poorly controlled diabetes, but it was "controlled well" more recently through diet and medication. (Tr. at 20, 573, 578, 702, 775). The medical records do show Hayden had a history of heart palpitations which showed improvement with medication. (Tr. at 643). Cardiac testing from 2016-2018 sometimes indicated mild abnormalities, while other tests, including EKGs, an echocardiogram, and a stress test, produced normal results. (Tr. at 644-46, 652, 659, 665, 679, 680, 695). Musculoskeletal and neurological exam findings were generally normal. *See id*. Hayden's conservative treatment history, normal physical exam findings, and good response to treatment support the light work RFC.

State agency consultant Jerry Thomas, M.D. reviewed the medical records and opined that Hayden was capable of occasionally lifting and carrying up to 20 pounds; frequently lifting and carrying 10 pounds; pushing and pulling without limitation, except as noted for lifting and carrying; and sitting, standing, and/or walking for up to six hours per workday. (Tr. at 85). Hayden's own reports of her functional abilities support the RFC as well. She reported that she was able to take care of pets, manage her personal care, drive, run errands, prepare 30-minute meals, shop in stores weekly, handle the household chores

by herself, and walk a mile before needing to stop and rest for 15 minutes. (Tr. at 36-37, 46-47, 200-07).

Hayden has not directed the Court to any evidence proving that her ability to stand or walk is more limited than her RFC suggests. The ALJ's analysis was sufficient and substantial evidence supports his findings.

### Claim 2: Development of the Record

Hayden's second allegation of error concerns the ALJ's treatment of the medical opinion evidence. Hayden argues that an RFC must be supported by a medical opinion from a treating physician, but this argument is meritless. The Eighth Circuit has unequivocally stated that "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence) and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id*. (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). The medical evidence in the record was adequate for the ALJ to make a disability determination, and Hayden has not alleged any unfairness or prejudice resulting from the ALJ's alleged failure to develop the record. *See Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001). The ALJ did not err in failing to obtain additional medical opinions from Hayden's treatment providers.

7

Hayden also asserts that the ALJ erred by relying on Dr. Thomas's opinion that she was capable of performing light work. She contends that his opinion is a mere "statement about what [her RFC] is" using agency terminology, rather than a proper description of her functional abilities and limitations. 20 C.F.R. § 416.920b(c)(3)(vi). Such statements are inherently neither valuable nor persuasive, as the RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1520b(c), 416.920b(c). But Dr. Thomas did not express his findings solely in exertional terms. He fully considered and made specific findings about Hayden's ability to perform each of the strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling. (Tr. at 84–85). The Court finds no error in the ALJ's reliance on his opinion. Furthermore, any error in this regard would be harmless. Although the ALJ found the opinion "mostly persuasive," he ultimately fashioned an even more favorable RFC than Dr. Thomas suggested. Reversal is not warranted on this basis.

### Declaratory Judgment

Finally, Hayden has raised a number of generalized grievances about the administrative process for determining disability. She argues that the regulations and policies governing the benefits adjudication process are vague and leave too much discretion to individual ALJs. She asks that the Court enter a judgment declaring that "the system used by the Social Security Administration results in decisions that are arbitrary and capricious, fails to provide [due process], and fails to provide equal protection" to claimants.

Congress has granted the Commissioner exceptionally broad rulemaking authority "to regulate and provide for the nature and extent of the proofs and evidence" required to

establish a claimant's right to benefits. 42 U.S.C. § 405(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). The Court's review of these regulations is limited to determining whether they are arbitrary or capricious and whether they exceed the Commissioner's authority. *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Hayden has not identified any specific regulations in support of her "vagueness" arguments. The only (somewhat) concrete example she provides is the agency's use (generally) of the terms "mild," "moderate," "marked," and "extreme," which she says are undefined. But those terms *are* defined in the Listings, and the regulations describe how an ALJ applies them in the decision-making process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2); 20 C.F.R. §§ 404.1520a(c)–(d), 416.920a(c)–(d).

To support her claim that the entire evaluation process is arbitrary and treats similarly situated claimants unequally, Hayden cites to a 2017 report by the U.S. Government Accountability Office about how claim allowance rates vary among ALJs. (Tr. at 266-349). But Hayden fails to explain how this evidence relates to her personally, or to the ALJ's decision denying her benefits. Hayden has not alleged that she herself was treated unequally, or that she was somehow denied due process. She does not identify any particularized injury she has suffered, or any causal relationship between the injury and the challenged conduct. Thus, she cannot show a likelihood that her injury would be redressed by the declaratory relief she seeks. *See Regional Home Health Care, Inc. v. Becerra*, 19 F.4th 1043, 1044–45 (8th Cir. 2021) ("In all civil litigation, the judicial decree is not the end but the means. . . . The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is the

9

settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." (emphasis in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987))). No further consideration of these claims is warranted.

## IV. CONCLUSION

Substantial evidence supports the Commissioner's decision that Hayden was not disabled. The Court should affirm the Commissioner's decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 5th day of April 2023.

_____
UNITED STATES MAGISTRATE JUDGE